**The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below. This document was signed electronically on May 31, 2017, which may be different from its entry on the record.**

**IT IS SO ORDERED.**

**Dated: May 31, 2017**



ARTHUR I. HARRIS
UNITED STATES BANKRUPTCY JUDGE

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| In re: | ) |
| | ) Chapter 7 Proceedings |
| ASHLEY ANN-MARIE McZEAL, | ) |
|     Debtor. | ) |
| _____ | ) Case No. 14-15947 |
| | ) |
| MARVIN A. SICHERMAN, | ) |
| TRUSTEE, | ) |
|     Plaintiff, | ) Judge Arthur I. Harris |
| | ) |
| v. | ) |
| | ) Adversary Proceeding |
| | ) No. 16-1119 |
| WORLD AUTO NETWORK INC., | ) |
|     Defendant. | ) |

MEMORANDUM OF OPINION[1]

On September 16, 2016, the chapter 7 trustee filed this adversary

proceeding against the defendant, World Auto Network Inc. ("World Auto"). The

---

[1] This Opinion is not intended for official publication.

trustee seeks money damages under federal and state law stemming from debtor Ashley Ann-Marie McZeal's prepetition purchase of a used car from World Auto. On March 3, 2017, World Auto filed a motion to stay proceedings pending arbitration (Docket No. 15), which the trustee opposed. (Docket No. 19). For the reasons that follow, World Auto's motion is granted, and this adversary proceeding is stayed pending arbitration. World Auto shall file a written report with the Court as to the status of the arbitration on or before August 31, 2017.

## JURISDICTION

This Court has jurisdiction over this adversary proceeding under 28 U.S.C. §§ 1334 and 157(a) and Local General Order 2012-7 of the United States District Court for the Northern District of Ohio. Although the trustee's claims may be statutorily core to the extent that they concern the administration of the estate and the trustee's attempt to obtain and liquidate estate property, *see* 11 U.S.C. § 157(b)(2)(A) and (O), these claims are constitutionally non-core in that they arise exclusively out of prepetition state law and federal Truth in Lending Act claims, originally held by McZeal, brought by the trustee on behalf of the bankruptcy estate against a third party. *Cf. Stern v. Marshall*, 564 U.S. 462 (2011) (bankruptcy court lacked constitutional authority to enter judgment on debtor's counterclaim for tortious interference with trust provisions).

2

"A bankruptcy judge may hear a proceeding that is not a core proceeding but that is otherwise related to a case under title 11," and the district court may refer such a proceeding for a bankruptcy judge to "determine and enter appropriate orders and judgments" with the consent of all parties. 11 U.S.C. § 157(c). The trustee has expressly consented to this Court entering final judgment on the trustee's claims in this proceeding, and defendant World Auto has impliedly consented to this Court entering a final order on the motion to stay by not asking for the reference to be withdrawn and, instead, moving this Court for an order to stay the proceeding and compel arbitration. *See* 28 U.S.C. § 157(d) ("The district court may withdraw, in whole or in part, any case or proceeding referred under this section . . . on timely motion of any party, for cause shown"); *Wellness Intern. Network, Ltd. v. Sharif*, 135 S. Ct. 1932, 1948 (2015) (quoting *Roell v. Withrow*, 538 U.S. 580, 590 (2003)) (litigants may impliedly consent to bankruptcy court entering final judgment where litigant is "aware of the need for consent and the right to refuse it, and still voluntarily appeared to try the case").

## PROCEDURAL HISTORY

On September 16, 2014, McZeal filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code. (Docket No. 1, Case No. 14-15947). McZeal listed World Auto as a creditor holding an unsecured nonpriority claim on her

3

Schedule F and amended her Schedules B and C to include a "potential claim against World Auto Network." (Docket No. 8, Case No. 14-15947).

On September 16, 2016, the chapter 7 trustee filed this adversary proceeding against World Auto alleging seven counts on behalf of McZeal's bankruptcy estate. Count one seeks damages for violation of the deposit requirements of the Ohio Consumer Sales Practices Act and Ohio Administrative Code. Count two seeks damages for a sale at a price over the advertised price in violation of the Ohio Consumer Sales Practices Act and the Ohio Administrative Code. Count three seeks damages for raising the price of a vehicle to a specific consumer in violation of the Ohio Consumer Sales Practices Act and Ohio Administrative Code. Count four seeks damages for charging an interest rate in excess of the legal maximum of 25% imposed by the Ohio Retail Installment Sales Act, Ohio usury law, and the Ohio Consumer Sales Practices Act. Count five seeks damages for violating the prohibition against spot delivery agreements contained in the Ohio Consumer Sales Practices Act and Truth in Lending Act. Count six seeks damages for fraud, fraud in the inducement, and misrepresentation. Count seven seeks damages for failing to properly disclose and calculate a finance charge and annual percentage rate in violation of the Truth in Lending Act.

4

On November 21, 2016, in lieu of filing an answer to the adversary complaint, World Auto filed a settlement offer following procedures established under the Ohio Consumer Sales Practices Act. On December 19, 2016, the trustee filed a conditional acceptance; however, the trustee's acceptance was more akin to a counteroffer as the trustee agreed to accept $5,000 plus an additional $2,500 in attorney's fees, while World Auto's settlement offer was for a total of $5,000, including attorney's fees. In addition, World Auto maintained that its $5,000 offer was to settle all of the trustee's claims, not just those claims under the Ohio Consumer Sales Practice Act. The Court then set a briefing schedule to resolve whether there was a binding settlement and, if so, the terms of the settlement; however, by agreement, the trustee's conditional acceptance was withdrawn. The Court then gave World Auto until March 6, 2017, to file any motion to compel arbitration.

On March 3, 2017, World Auto filed a motion to stay proceedings pending arbitration. (Docket No. 15). The trustee filed a memorandum in opposition to the defendant's motion to stay the proceedings pending arbitration on April 10, 2017. (Docket No. 19). On May 1, 2017, World Auto filed a response to the trustee's memorandum ten days after the April 21, 2017, extended deadline, (Docket Nos. 17 and 20), which the Court now grants leave to file.

5

BACKGROUND

On or about June 11, 2014, McZeal purchased a 2008 Nissan Rogue from World Auto. To complete this transaction, McZeal and a representative of World Auto executed a number of documents. All of these documents appear to have been signed on June 11, 2014, although it is unclear in what order the documents were signed or if they were all signed at the same time.

The documents submitted to the Court are all dated June 11, 2014, and consist of (1) a three-page "Buyer's Order" (Docket No. 19-1); (2) a six-page "Retail Installment Contract and Security Agreement" (Docket No. 19-3); (3) a two-page "Bill of Sale" (Docket No. 19-2); and (4) a one-page "Arbitration Agreement" (Docket No. 20-1).

*"Buyer's Order"*

McZeal and a representative of World Auto signed a "Buyer's Order" that generally outlines McZeal's agreement to buy the vehicle from World Auto for the stated price and to complete any documents necessary for the transaction. The "Buyer's Order" also anticipates the possibility of the seller financing the purchase in a section on page 2 labeled "Retail Installment Contract." This section reads as follows:

**Retail Installment Contract.** In the event that you and we enter into

6

a retail installment contract for the financing of the purchase of the
Vehicle, the terms of the retail installment contract will control any
inconsistencies between this Contract and the retail installment
contract.

On the following page, in the signatures section, both McZeal and a representative

of World Auto signed the document. Immediately above McZeal's signature is a

line which reads:

☐ A separate Arbitration Agreement is a part of this Contract.

This box is not marked in any way, although nothing in the "Buyer's Order"

instructs that the box is meant to be marked or what – if any – effect checking or

marking this box would have on the contract. Finally, the "Buyer's Order" does

not appear to contain any specific choice of law provision.

*"Retail Installment Contract and Security Agreement"*

McZeal and a representative of World Auto also executed a "Retail

Installment Contract and Security Agreement" that generally outlines the terms of

financing the purchase of the vehicle from World Auto. The "Retail Installment

Contract and Security Agreement" contains an "Arbitration Provision" on pages 4

and 5 that states, in relevant part:

Arbitration Provision. PLEASE READ CAREFULLY! By agreeing
to this arbitration provision you are giving up your right to go to court
for claims and disputes arising from this Contract:

7

- EITHER YOU OR WE MAY CHOOSE TO HAVE ANY DISPUTE BETWEEN YOU AND US DECIDED BY ARBITRATION, AND NOT BY A COURT OR BY JURY TRIAL

. . . .

You or we (including any assignee) may elect to resolve any Claim by neutral, binding arbitration and not by a court action. "*Claim*" means any claim, dispute or controversy between you and us or our employees, agents, successors, assigns or affiliates arising from or relating to:

1. the credit application;
2. the purchase of the Property;
3. the condition of the Property;
4. this Contract;
5. any insurance, maintenance, service or other contracts you purchased in connection with this Contract; or
6. any related transaction, occurrence or relationship.

This includes any Claim based on common or constitutional law, contract, tort, statute, regulation, or other ground. To the extent allowed by law, the validity, scope, and interpretation of this arbitration provision are to be decided by neutral, binding arbitration.

On page 3 of the "Retail Installment Contract and Security Agreement,"

immediately below a signature line, which was signed by McZeal, there is a

section labeled "Rejection of Arbitration" that notes:

Checking the following box will not affect the terms under which we will finance and sell the Property or any of the terms of this Contract, except that the arbitration provision will not be a part of this Contract:

☐ You reject the arbitration provision of this Contract.

8

This box is not checked on the "Retail Installment Contract and Security Agreement" signed by McZeal and a representative of World Auto. On page 6 of the "Retail Installment Contract and Security Agreement," immediately above the "Signatures" section is a line that reads:

> **Arbitration.** This Contract contains an Arbitration Provision that
> <u>affects your rights</u>.

The "Retail Installment Contract and Security Agreement" states in a section labeled "Additional Terms of the Sales Agreement" that it is "governed by the law of Ohio and applicable federal law and regulations." However, in the section labeled "Arbitration Provision" the "Retail Installment Contract and Security Agreement" states that "this arbitration provision is governed by the [Federal Arbitration Act] to the exclusion of any different or inconsistent state or local law."

Although the trustee asserts that the "Retail Installment Contract and Security Agreement" was "signed after the sale to provide financing" (Docket No. 19, pg. 1), nothing in the documents indicates the order in which any of these documents were executed.

*"Bill of Sale"*

McZeal and a representative of World Auto also signed a "Bill of Sale" that

9

describes the vehicle and outlines terms and conditions of the purchase. The "Bill of Sale" also anticipates that the buyer may finance the purchase and that such financing may be controlled by an installment sale contract. On page 2 of the "Bill of Sale," a section titled "Terms and Conditions" states, in relevant part:

> 2. Page one and page two of this agreement, together with any installment sale contract shall constitute the entire agreement between the parties pertaining to the subject matter hereof and supersede all prior agreements, understandings, negotiations and discussions, whether oral or written, of the parties. This agreement cannot be modified except by a written instrument executed by the parties. Purchaser acknowledges that Purchaser is not relying on any representation that is not contained in this Agreement.

Immediately next to the above section, there is a line for the buyer to initial. In the "Bill of Sale" signed by McZeal and a representative of World Auto, McZeal appears to have initialed "AM" on this line. The "Bill of Sale" also provides that it "shall be interpreted, construed, and enforced according to the laws of the State of Ohio."

*"Arbitration Agreement"*

McZeal and a representative of World Auto also signed an "Arbitration Agreement" that sets forth an agreement that disputes between McZeal and World Auto may be settled by binding arbitration at the request of either party. The terms of this "Arbitration Agreement" appear to be largely similar to those of the

10

"Arbitration Provision" found within the "Retail Installment Contract and Security Agreement" although the specific wording is different. The most notable difference between the terms of the "Arbitration Agreement" and the "Arbitration Provision" found within the "Retail Installment Contract and Security Agreement" is that the "Arbitration Agreement" only requires World Auto to pay $1,500 towards arbitration, whereas the "Arbitration Provision" found within the "Retail Installment Contract and Security Agreement" requires World Auto to advance up to $2,500 towards arbitration expenses. However, in later filings with the Court, World Auto offered to "contribute two thousand, five hundred dollars ($2,500.00) toward arbitration expenses as called for in the arbitration clause attached to plaintiff's complaint." (Docket No. 20). The "Arbitration Agreement" provides that:

> A "Dispute" is any contract, tort, statutory or other claim or dispute between Seller and me arising out of or relating to my credit application, any retail installment sales contract or any resulting transaction or relationship (including any such relationship with third parties who do not sign this Agreement). . . . "Dispute" includes any disagreement over the interpretation and scope of this clause, or the arbitrability of the Dispute.
>
> Any Dispute shall, at Seller's or my request, be resolved by binding arbitration and not in court.
>
> . . . .

11

> This Arbitration Agreement is incorporated into and becomes a part
> of any retail installment contract or other credit obligation that I enter
> into with Seller on the date shown above.

The "Arbitration Agreement" contains an opt out provision that permits the buyer

to opt out of the agreement by notifying World Auto in writing, sent by registered

mail, postmarked no later than 10 days from June 11, 2014. Neither party has

suggested that McZeal sent such an opt out notification. The "Arbitration

Agreement" explicitly states that it is governed by the Federal Arbitration Act,

9 U.S.C. §§ 1-16 and "not by any state arbitration law."

## LEGAL STANDARD

The arbitration provisions at issue state that they are governed by the

Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* ("the FAA"). "Congress enacted the

FAA in 1925 pursuant to its power to regulate interstate commerce 'to ensure

judicial enforcement of privately made agreements to arbitrate,' and 'to overrule

the judiciary's longstanding refusal to enforce agreements to arbitrate.' " *Stutler v.*

*T.K. Constructors Inc.*, 448 F.3d 343, 345 (6th Cir. 2006) (quoting *Dean Witter*

*Reynolds, Inc. v. Byrd*, 470 U.S. 213, 219-20 (1985)). "The FAA creates 'a body

of federal substantive law of arbitrability, applicable to any arbitration agreement

within the coverage of the Act.' " *Evanston Ins. Co. v. Cogswell Props., LLC*,

683 F.3d 684, 693 (6th Cir. 2012) (quoting *Moses H. Cone Hosp. v. Mercury*

12

*Constr. Corp.*, 460 U.S. 1, 24 (1983)).

Under the FAA, "a written agreement to arbitrate disputes which arises out of a contract involving transactions in interstate commerce 'shall be valid, irrevocable, and enforceable, save upon such ground as exists at law or in equity for the revocation of any contract.' " *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000) (quoting 9 U.S.C. § 2). "When asked by a party to compel arbitration under a contract, a federal court must determine whether the parties agreed to arbitrate the dispute at issue." *Id.* (citing *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985)). "Courts are to examine the language of the contract in light of the strong federal policy in favor of arbitration. Likewise, any ambiguities in the contract or doubts as to the parties' intentions should be resolved in favor of arbitration." *Id.* (citations omitted).

Federal courts in the Sixth Circuit must answer four questions when considering whether to grant a motion to compel arbitration: (1) whether the parties agreed to arbitration; (2) the scope of the arbitration agreement; (3) whether Congress intended that any asserted statutory claims to be nonarbitrable; and (4) whether to stay remaining claims if only some of the claims in the proceeding are subject to arbitration. *See Uszak v. AT & T Mobility Services LLC*, 658 F. App'x 758, 761 (6th Cir. 2016) (citing *J.D. Byrider*, 228 F.3d at 714).

13

"Parties may delegate gateway issues of arbitrability to the arbitrator. A discrete agreement to submit gateway arbitrability questions to the arbitrator is treated as 'an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce[.]' " *Bruster v. Uber Technologies Inc.*, 188 F. Supp. 3d 658, 662 (N.D. Ohio 2016) (quoting *Rent-A-Ctr., West, Inc. v. Jackson*, 561 U.S. 63, 69-70 (2010)). "However, the presumption in favor of arbitration does not apply to delegation clauses. 'Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator.' " *Id.* (quoting *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986)).

"The FAA preempts state arbitration laws. However, state contract law applies to determine the validity of the arbitration provision." *Id.* at 663. There is no resolution as to whether a bankruptcy court should apply federal common law or the law of the forum state in a bankruptcy case. *See State Bank of Florence v. Miller (In re Miller)*, 513 F. App'x 566, 572 (6th Cir. 2013) ("[T]he federal circuits are split on whether state or federal law supplies the choice-of-law rules in bankruptcy cases."). But this Court " 'need not resolve that issue here,' because both the Ohio Supreme Court and the Sixth Circuit follow the approach of the Restatement (Second) of Conflict of Laws." *Bavelis v. Doukas (In re Bavelis)*,

14

--- B.R. ----, 2017 WL 737077 (Bankr. S.D. Ohio Feb. 22, 2017) (quoting *In re Miller*, 513 F. App'x at 572). *See Morgan v. Biro Mfg. Co.*, 474 N.E.2d 286, 288-89 (Ohio 1984) ("[w]e hereby adopt the theory stated in the Restatement of the Law of Conflicts"); *Hauf v. Life Extension Found.*, 454 F. App'x 425, 430 n.2 (6th Cir. 2011) ("federal common law . . . follow[s] the *Restatement (Second) of Conflict of Laws*."). "Absent an effective choice of law provision, Ohio courts apply the law of the state with the most significant relationship to the contract." *Andrews v. Columbia Gas Transmission Corp.*, 544 F.3d 618, 623 (6th Cir. 2008) (citing Restatement (Second) of Conflict of Laws § 188 and *Ohayon v. Safeco Ins. Co. of Ill.*, 747 N.E.2d 206, 220 (Ohio 2001)).

## DISCUSSION

The parties dispute the enforceability of the arbitration provisions contained in the "Retail Installment Contract and Security Agreement" and the "Arbitration Agreement." World Auto moves to stay the proceeding in this Court and to compel arbitration pursuant to Ohio Rev. Code §§ 2711.01 & 2711.02 and 9 U.S.C. § 1 *et seq*. World Auto argues that the arbitration provisions are binding, that both federal and state law place the burden on the party objecting to arbitration, and that all of the trustee's claims fall within the scopes of these arbitration provisions.

15

The trustee raises three main arguments in opposition. First, the trustee argues that the Court must initially decide if there is a valid agreement to arbitrate under Ohio law. The trustee contends that five out of the seven claims in the complaint arise out of the "Buyer's Order," which, the trustee argues, does not contain an arbitration provision. The trustee appears to base this contention on the fact that the box on the signature page of the "Buyer's Order" is not checked. Because this box is not checked, the trustee argues that there was no agreement to arbitrate in the "Buyer's Order" and any ambiguous language that suggests an agreement to arbitrate should be construed against the drafter, World Auto. The trustee extrapolates that, since five of the seven claims should not be arbitrated, for efficiency this Court should hear all seven claims. Second, the trustee argues that the arbitration agreements contained in the "Retail Installment Contract and Security Agreement" and the "Arbitration Agreement" should not be given effect because they violate the "single document rule" of Ohio Rev. Code § 4517.26. Third, the trustee argues that enforcing the arbitration agreement could deny the trustee a forum in which to litigate the trustee's claims. The trustee bases this argument on the fact that the estate has no assets and arbitration could cease if the fees exceed the amount World Auto is contractually obligated to pay.

This Court need not address all of the arguments raised by the trustee

because McZeal and World Auto clearly and unmistakably agreed to submit gateway questions of arbitrability to arbitration. *See Rent-A-Ctr., West, Inc. v. Jackson*, 561 U.S. 63, 69-70 (2010) (parties may agree to delegate authority to arbitrator to determine "whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy"). Also, as explained more fully below, Congress did not intend for the claims raised by the trustee to be nonarbitrable in bankruptcy. Accordingly, the trustee's claims in this adversary proceeding are stayed pending arbitration, including any claims that the arbitrator may determine to be nonarbitrable or outside the scope of the arbitration agreement.

*Validity of the Delegation Provision*

All of the trustee's claims against World Auto are prepetition claims brought by the trustee as successor to McZeal's interest. Accordingly, the trustee is bound by McZeal's agreements to arbitrate her claims in the "Retail Installment Contract and Security Agreement" and "Arbitration Agreement." *See In re The Great Spa Manufacturing Company, Inc.*, Bankr. No. 08-52293, Adv. No 09-5009, 2009 WL 1457740, *4 (Bankr. E.D. Tenn. May 22, 2009) (a chapter 11 trustee, as successor to the debtor's interest in non-core prepetition claims, is bound by debtor's agreement to arbitrate) (citing *Hays & Co. v. Merrill Lynch, Pierce,*

17

*Fenner & Smith, Inc.*, 885 F.2d 1149, 1153 (3d Cir. 1989)).  The trustee concedes

both that McZeal signed the "Retail Installment Contract and Security Agreement"

and that two of the claims in the trustee's complaint relate to the "Retail

Installment Contract and Security Agreement."

In both the "Retail Installment Contract and Security Agreement" and the

"Arbitration Agreement," McZeal and World Auto agreed to submit gateway

questions of arbitrability to an arbitrator, not the Court.  The "Retail Installment

Contract and Security Agreement" provides that "[t]o the extent allowed by law,

the validity, scope, and interpretation of this arbitration provision are to be decided

by neutral, binding arbitration."  The "Arbitration Agreement" states that "[any]

Dispute shall . . . be resolved by binding arbitration" and that " 'Dispute' includes

any disagreement over the interpretation and scope of this clause, or the

arbitrability of the Dispute."

The trustee argues that the arbitration provisions of the "Retail Installment

Contract and Security Agreement" and "Arbitration Agreement" are unenforceable

under state law.  Specifically, the trustee advances two theories, that (1) the

arbitration agreements violate the "single document rule" of Ohio Rev. Code

§ 4517.26; and (2) the parties did not agree to arbitrate because the "Retail

Installment Contract and Security Agreement" and "Arbitration Agreement" are

18

inconsistent with the "Buyer's Order" and the "Bill of Sale," which did not contain arbitration provisions, and that this inconsistency should be construed against World Auto as the drafter. The Court rejects these arguments.

The validity of these agreements is appropriately determined under Ohio law. The "Bill of Sale" and "Retail Installment Contract and Security Agreement" have choice of law provisions that provide that Ohio law governs their interpretation. The "Buyer's Order" and "Arbitration Agreement" do not have a choice of law clause, but Ohio has the most significant relationship to these contracts as the contracts were signed in Ohio, McZeal resided in Ohio when the contracts were signed, and World Auto operated a location in Ohio when the contracts were signed.

The trustee argues that the arbitration agreements in the "Retail Installment Contract and Security Agreement" and "Arbitration Agreement" violate the "single document rule" of Ohio Rev. Code § 4517.26 and should not be enforced. Ohio Rev. Code § 4517.26(A) states in relevant part:

> Every retail and wholesale sale of a motor vehicle shall be preceded by a written instrument or contract that shall contain all of the agreements of the parties and shall be signed by the buyer and the seller.

In support of the trustee's argument, the trustee cites one Ohio case analyzing

19

Ohio Rev. Code § 1317.02 in the context of a "spot delivery" or "yo-yo" transaction, *Cartier v. Brown Credit Lot*, No. CVI 04-24578, 2005 WL 3867414 (Toledo Mun. Ct. April 4, 2005), as well as cases from other jurisdictions.

The facts in *Cartier* are not applicable here. In that case, the purchasers of an automobile signed both a Purchase Contract and a Retail Installment Sale Contract on the date they purchased their vehicle. Approximately one month later, the automobile seller informed the purchasers that their financing was not approved and requested that the purchasers return to "re-do some paperwork for the loan" at a higher interest rate. The purchasers refused to refinance the purchase at a higher interest rate and returned the automobile. The seller then refused to refund the purchasers' down payment. *Id.* at *1. The court in *Cartier* found that, in addition to "two sales contracts purporting to be the entire agreement . . . a third, completely extraneous 'ALTERNATE FINANCING/AGREEMENT TO RETURN VEHICLE' is at best void for its abject failure to conform with [the] single-document rule.' " *Id.* at *5. Crucially, there was no evidence that either of the sales contracts purporting to be the entire agreement referenced or incorporated the extraneous alternate financing agreement.

The arbitration agreement in this case is much more similar to that in

20

another case cited by the trustee – *Dunn v. B&B Automotive*,

Civil Action No. 12-377, 2012 WL 2005223 (E.D. Penn. 2012). In *Dunn v. B&B*

*Automotive*, the buyer of a motor vehicle challenged the enforceability of an

arbitration agreement that "appeared only in a separate document and was not

within the four corners of the [Retail Installment Sales Contract]" as violating a

Pennsylvania statute that required that "[e]very installment sale contract shall be in

writing and shall contain all of the agreements between the buyer and seller

relating to the installment sale of the motor vehicle sold and shall be signed by

both the buyer and seller." *Id.* at *3 (quoting 69 P.S. § 613). The district court

enforced the arbitration agreement because the buyer was "clearly alert[ed]" to the

arbitration agreement through a checked box next to the words "Arbitration

Agreement Attached" and the arbitration agreement had clear language stating

"[t]his Arbitration Agreement is, *by this reference, incorporated into and*

*becomes a part of the Retail Installment Contract and/or Purchase agreement*

between you and us signed on the date below." *Id.* at *3-4. The district court

noted that the buyer's argument under the Pennsylvania statute "disregard[ed] the

most basic principles of contract law. . . . '[I]t is a general rule of contract law that

where two writings are executed at the same time and are intertwined by the same

subject matter, they should be construed together and interpreted as a whole, each

21

one contributing to the ascertainment of the true intent of the parties.' " *Id.* at *3 (quoting *Kroblin Refrigerated Xpress, Inc. v. Pitterich*, 805 F.2d 96, 107 (3d Cir. 1986)).

The rule concerning integrated writings in Ohio is much the same. *See Volovetz v. Tremco Barrier Solutions, Inc.*, Ohio Ct. App. 10th Dist., 2016-Ohio-7707, at ¶ 26 (Ohio contract law includes doctrine of incorporation by reference, under which, an incorporated document "becomes part of the contract."). The test in Ohio for whether a document is incorporated into a contract is whether "the contract makes clear reference to the document and described it in such terms that its identity may be ascertained beyond doubt." *Id.* at ¶ 27 (quoting 11 Lord, *Williston on Contracts*, Section 30:25, at 294-301 (4th Ed. 2012)). *Cf. Rinard v. Eastern Co.*, 978 F.2d 265, 269 n.3 (6th Cir. 1992).

The contracts in this proceeding – which were all signed on the same date – incorporate one another. The "Buyer's Order" states on page 2 that:

> **Retail Installment Contract.** In the event that you and we enter into a retail installment contract for the financing of the purchase of the Vehicle, the terms of the retail installment contract will control any inconsistencies between this Contract and the retail installment contract.

Similarly, the "Bill of Sale" states:

> 2.     Page one and page two of this agreement, together with any

22

installment sale contract shall constitute the entire agreement between the parties pertaining to the subject matter hereof and supersede all prior agreements, understandings, negotiations and discussions, whether oral or written, of the parties.

Finally, the "Arbitration Agreement" states:

This Arbitration Agreement is incorporated into and becomes a part of any retail installment contract or other credit obligation that I enter into with Seller on the date shown above.

These provisions make reference to one another, and the identities of the referenced documents can be readily ascertained. Moreover, the language of these provisions demonstrates that:

- the "Bill of Sale" and "Retail Installment Contract and Security Agreement" were meant to be read together as the "entire agreement";

- the "Retail Installment Contract and Security Agreement" incorporated the "Buyer's Order" and the "Arbitration Agreement"; and

- any inconsistencies between the "Buyer's Order" and the "Retail Installment Contract and Security Agreement" were to be controlled by the terms of the "Retail Installment Contract and Security Agreement."

The trustee emphasizes the fact that the box above the signature line in the "Buyer's Order" is not marked in any way. Although the "Buyer's Order" is completely silent as to what effect – if any – marking this box would have on the terms of the contract, the Court will assume that a failure to mark this box is, in

23

fact, an inconsistency between the "Buyer's Order" and the "Retail Installment Contract and Security Agreement."  However, the terms of the "Buyer's Order" specify that, if there is any inconsistency, the terms of the "Retail Installment Contract and Security Agreement" control.

The parties clearly and unmistakably agreed to submit gateway questions of arbitrability to arbitration.  Because the delegation provisions of the "Retail Installment Contract and Security Agreement" and "Arbitration Agreement" are valid, this Court will not decide whether the arbitration provisions of these contracts are valid and will not address the merits of the trustee's arbitrability claims.  *See Bruster v. Uber Techs. Inc.*, 188 F. Supp. 3d 658, 664-65 (N.D. Ohio 2016) (declining to address gateway questions of arbitrability and merits of arbitrability claims where delegation provision is valid).  Whether the parties agreed to arbitration and the scope of the arbitration agreement are gateway questions for the arbitrator to address, not this Court.

As noted earlier, there are actually two arbitration agreements – one contained within the "Retail Installment Contract and Security Agreement" and a separate "Arbitration Agreement" that is incorporated into the "Retail Installment Contract and Security Agreement."  While the wording of the two arbitration agreements is not identical, the only apparent conflicting provision relates to

24

whether World Auto agreed to advance or otherwise pay for the costs of arbitration and the amount of money that World Auto agreed to either advance or pay. In any event, given the clear and unmistakable agreement to arbitrate gateway issues of arbitrability in both agreements, the Court will leave it to the arbitrator to determine which, if any, of the claims fall outside the scope of arbitration and to resolve any conflicts between the two arbitration contracts. For example, the arbitration agreement in the "Retail Installment Contract and Security Agreement" appears to encompass a variety of potential claims that go beyond the four corners of the "Retail Installment Contract and Security Agreement."

*Congressional Intent*

Even though McZeal and World Auto validly delegated gateway questions of arbitrability to arbitration, the Court must still determine whether Congress intended any of the trustee's claims to be nonarbitrable. *Uszak*, 658 F. App'x at 761. "Like any statutory directive, the [FAA's] mandate may be overriden by a contrary congressional command." *Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220, 226 (1987). "The burden is on the party opposing arbitration, however, to show that Congress intended to preclude a waiver of judicial remedies for the statutory rights at issue." *Id.* at 227. To discern whether Congress intended to preclude arbitration of such statutory issues, the Court looks

25

to the statute's text, legislative history, and any "inherent conflict between arbitration and the statute's underlying purposes." *Id.* In this process, the trustee has the burden of showing that Congress intended to preclude arbitration.

The trustee argues that enforcing the arbitration agreement could deny the bankruptcy estate a forum in which to litigate its claims. World Auto has only agreed to advance, at most, $2,500 in arbitration fees and the bankruptcy estate has no liquid assets. Therefore, the trustee argues – without citing to any authority – that, should the arbitration fees exceed $2,500, the bankruptcy estate's claims would go unheard. The Court construes this argument, along with the fact of McZeal filing her chapter 7 petition in the first instance, as raising an inherent conflict between arbitration and the underlying purposes of the Bankruptcy Code.

The Sixth Circuit has not addressed whether there is an inherent conflict between arbitration and the Bankruptcy Code. *See Kiskaden v. LVNV Funding, LLC (In re Kiskaden)*, Case No. 16-20207, Adv. No. 16-2008, 2017 WL 1323409, at *4 (Bankr. E.D. Ky. April 7, 2017) ("The Sixth Circuit has not addressed the *McMahon* exception in the bankruptcy context."). Generally, courts find no inherent conflict between arbitration and bankruptcy where the plaintiff's claims do not implicate an underlying bankruptcy issue, but do find an inherent conflict where "the claims at the center of the dispute were directly related to the

26

Bankruptcy Code." *See id.* (comparing *In re Mintze*, 434 F.3d 222, 231-32

(3d Cir. 2006) and *In re No Place Like Home, Inc.*, 559 B.R. 863, 875

(Bankr. W.D. Tenn. 2016), with *In re Gandy*, 299 F.3d 489, 495-500

(5th Cir. 2002), *In re Eber*, 687 F.3d 1123, 1130-31 (9th Cir. 2012), and *In re*

*White Mountain Mining Co., L.L.C.*, 403 F.3d 164, 169 (4th Cir. 2005)). *See also*

*Moses v. CashCall, Inc.*, 781 F.3d 63, 73 (4th Cir. 2015) (per curiam) ("forcing

[debtor] to arbitrate her constitutionally core claim would inherently conflict with

the purposes of the Bankruptcy Code").

All of the trustee's claims are constitutionally non-core, state law and

federal Truth in Lending Act claims originally held by McZeal against a third

party. Here, the trustee's claims certainly have the potential to augment the

bankruptcy estate, but "any such results [from these non-core claims] are simply

too attenuated, and indeed extrinsic to the bankruptcy, to constitute an 'inherent

conflict' with the Bankruptcy Code's purpose of facilitating an efficient

reorganization." *Moses*, 781 F.3d at 82 (Gregory, J., concurring). Because the

trustee has not met the burden of showing that Congress intended to preclude

arbitration of non-core matters in a bankruptcy proceeding, the Court has no

discretion and must enforce the arbitration agreements and their respective

delegation provisions.

27

Finally, all bankruptcy trustees must deal with the costs associated with liquidating contingent and noncontingent claims of a debtor's estate. For example, a trustee may abandon a vehicle or other asset because the costs of reducing the asset to money exceed whatever recovery might be available to unsecured creditors. Or a trustee may seek approval to compromise a contingent claim because she cannot find an attorney willing to pursue it. *See* 11 U.S.C. § 704(a)(1) (trustee shall "collect and reduce to money the property of the estate for which such trustee serves, and close such estate as expeditiously as is compatible with the best interest of parties in interest"). *See also American Express Co. v. Italian Colors Restaurant*, 133 S. Ct. 2304, 2312 (2013) (quoting *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 351 (2011)) ("We specifically rejected the argument that class arbitration was necessary to prosecute claims 'that might otherwise slip through the legal system.' ").

*All Claims Are Stayed Pending Arbitration*

All of the trustee's claims are stayed pending arbitration, including any claims that the arbitrator may determine to be nonarbitrable or outside the scope of the arbitration agreement. To ensure that the arbitration proceeds expeditiously, World Auto shall file a written status report with the Court on or before August 31, 2017.

28

CONCLUSION

For the reasons stated above, World Auto's motion is granted, and this adversary proceeding is stayed pending arbitration.  World Auto shall file a written report with the Court as to the status of the arbitration on or before August 31, 2017.

IT IS SO ORDERED.

29