The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below. This document was signed electronically on March 14, 2019, which may be different from its entry on the record.

**IT IS SO ORDERED.**

**Dated: March 14, 2019**



ARTHUR I. HARRIS
UNITED STATES BANKRUPTCY JUDGE

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| ASHLEY ANN-MARIE McZEAL, | ) | Case No. 14-15947 |
| Debtor. | ) | |
| | ) | Judge Arthur I. Harris |
| | ) | |
| MARVIN A. SICHERMAN, TRUSTEE, | ) | |
| | ) | |
| Plaintiff. | ) | Adversary Proceeding |
| | ) | No. 16-1119 |
| v. | ) | |
| | ) | |
| WORLD AUTO NETWORK INC., | ) | |
| Defendant. | ) | |

## MEMORANDUM OF OPINION[1]

This matter is currently before the Court on plaintiff-trustee Marvin A. Sicherman's motion for partial summary judgment. The trustee seeks summary judgment on seven counts under federal and state law stemming from the debtor

---

[1] This Opinion is not intended for official publication.

Ashley Ann-Marie McZeal's prepetition purchase of a used vehicle from World Auto Network ("World Auto"). For the reasons that follow, the Court grants summary judgment in favor of the trustee as to liability on count two and denies summary judgment as to liability on all remaining counts.

## JURISDICTION

This Court has jurisdiction over this adversary proceeding under 28 U.S.C. §§ 1334 and 157(a) and Local General Order 2012-7 of the United States District Court for the Northern District of Ohio. Both the trustee and World Auto have expressly consented to this Court conducting a jury trial and entering final judgment on the trustee's claims in this proceeding. Therefore, the Court need not determine whether the claims are core or non-core. *See* 28 U.S.C. § 157(c) and (e); *Wellness Intern. Network, Ltd. v. Sharif*, 135 S. Ct. 1932, 1949 (2015) ("Article III permits bankruptcy courts to decide *Stern* claims submitted to them by consent.").

## PROCEDURAL HISTORY

On September 16, 2014, Ashley Ann-Marie McZeal ("McZeal") filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code. (Case No. 14-15947, Docket No. 1). McZeal listed World Auto as a creditor holding an unsecured nonpriority claim on her Schedule F and amended her

2

Schedules B and C to include a potential claim against World Auto.  (Case No. 14-15947, Docket No. 8).

On September 16, 2016, the Chapter 7 trustee, Marvin A. Sicherman, filed this adversary proceeding against World Auto alleging seven counts on behalf of McZeal's bankruptcy estate.  Count one seeks damages for violation of the deposit requirements of the Ohio Consumer Sales Practices Act and the Ohio Administrative Code.  Count two seeks damages for a sale at a price over the advertised price in violation of the Ohio Consumer Sales Practices Act and the Ohio Administrative Code.  Count three seeks damages for raising the price of a vehicle to a specific consumer in violation of the Ohio Consumer Sales Practices Act and the Ohio Administrative Code.  Count four seeks damages for charging an interest rate in excess of the legal maximum of 25 percent imposed by the Ohio Retail Installment Sales Act, Ohio usury law, and the Ohio Consumer Sales Practices Act.  Count five seeks damages for violating the prohibition against spot delivery agreements contained in the Ohio Consumer Sales Practices Act and the Truth in Lending Act.  Count six seeks damages for fraud, fraud in the inducement, and misrepresentation.  Count seven seeks damages for failing to properly disclose and calculate a finance charge and annual percentage rate in violation of the Truth in Lending Act.

On November 30, 2018, the trustee filed a motion for partial summary judgment. (Docket No. 51). On January 23, 2019, World Auto filed a response to the motion. (Docket No. 54). The trustee had previously filed a reply on January 4, 2019. (Docket No. 52).

In his motion for partial summary judgment, the trustee is seeking a determination as to liability only. The issue of damages, if any, will presumably be decided at trial.

## BACKGROUND

Unless otherwise indicated, the following facts are undisputed. On or about June 11, 2014, McZeal purchased a 2008 Nissan Rogue from World Auto. To complete this transaction, McZeal and a representative of World Auto executed a number of documents. All of these documents appear to have been signed on June 11, 2014, although it is unclear in what order the documents were signed or if they were signed at the same time.

The documents relevant to this motion that are all dated June 11, 2014, consist of (1) a three-page "Buyer's Order" (Docket No. 54, Exhibit 2); (2) a six-page "Retail Installment Contract and Security Agreement" (Docket No. 54, Exhibit 4); (3) a two-page "Bill of Sale" (Docket No. 54, Exhibit 1); (4) a two-page

4

"Retail Motor Vehicle Credit Application" (Docket No. 52-1); and (5) a one-page "Spot Delivery Agreement" (Docket No. 54, Exhibit 7).

*"Buyer's Order"*

McZeal and a representative of World Auto signed a "Buyer's Order" that generally outlines McZeal's agreement to purchase the vehicle from World Auto for the stated price and to complete any documents necessary for the transaction. The "Buyer's Order" lists the specific details of the vehicle, including the year, make, model, and sale price. The "Buyer's Order" also provides information related to goods to be traded in, stating in pertinent part:

> **Trade-in Vehicle.** You will transfer title to the Trade-in Vehicle to us free of all liens except those noted on this Contract. You give permission to us to contact the lienholder(s) for payoff information. If the payoff information that we obtain from the lienholder(s) differs from the amount disclosed in this Contract, you agree to pay the difference to us if the actual amount of the balance owed is greater than the amount listed in this Contract. If the actual amount of the balance owed is less than the amount listed in this Contract, then we will pay you the difference.

The "Buyer's Order" provides information related to refunding any deposits made. The "Agreement to Purchase" section on page 2 states:

> **Agreement to Purchase.** You agree to buy the Vehicle from us for the price stated in this Contract. You agree to sign any documents necessary to complete this transaction. Unless you have cancelled this Contract under the condition described in the *Manufacturer* section, if you refuse to take delivery of the Vehicle, we can keep any deposits you have made to us, and you will be liable to us for all of our

5

damages and expenses in connection herewith, including but not limited to reasonable attorneys' fees.

The "Manufacturer" section, also on page 2, adds to the refund terms, stating:

> If you cancel this Contract under the terms of this section, we will refund to you any amounts you have paid to us. If you have delivered a Trade-in Vehicle to us, we will return it to you. If we have already sold the Trade-in Vehicle, we will pay you the trade-in allowance after adjusting for any payoff to a lienholder.

The "Buyer's Order" anticipates the possibility of the seller financing the purchase in a section on page 2 labeled "Retail Installment Contract." This section states:

> **Retail Installment Contract.** In the event that you and we enter into a retail installment contract for the financing of the purchase of the Vehicle, the terms of the retail installment contract will control any inconsistencies between this Contract and the retail installment contract.

On page 3, in the signatures section, both McZeal and a representative of World Auto signed the document.

### *"Retail Installment Contract and Security Agreement"*

McZeal and a representative of World Auto also executed a "Retail Installment Contract and Security Agreement" that generally outlines the terms of financing the purchase of the vehicle from World Auto. On page 1, a boxed area displays the "Federal Truth-in-Lending Disclosures" and lists the details of the contract: a 25 percent annual percentage rate; a $6,434.48 finance charge; $12,610

6

in credit provided to the buyer; a total payment equal to $19,044.48 after the buyer made all scheduled payments; the total sale price of $21,544.48, including a down payment of $2,500; and the detailed payment schedule beginning July 11, 2014, that required 42 monthly payments in the amount of $453.44. On the bottom of this page, McZeal initialed "AM."

On page 6, a signature box indicates that the "Retail Installment Contract and Sales Agreement" is the entire agreement, stating:

> **Entire Agreement**. Your and our entire agreement is contained in this Contract. There are no unwritten agreements regarding this Contract. Any change to this Contract must be in writing and signed by you and us.

McZeal signed her name on the signature line below.

*"Bill of Sale"*

McZeal and a representative of World Auto also signed a "Bill of Sale" that describes the vehicle and outlines the terms and conditions of the purchase. The "Bill of Sale" also anticipates that the buyer may finance the purchase and that such financing may be controlled by an installment sale contract. On page 2 of the "Bill of Sale," a section titled "Terms and Conditions" states, in relevant part:

> 2. Page one and page two of this agreement, together with any installment sale contract, shall constitute the entire agreement between the parties pertaining to the subject matter hereof and supersede all prior agreements, understandings, negotiations and discussions, whether oral or written, of the parties. This agreement cannot be

7

modified except by a written instrument executed by the parties. Purchaser acknowledges that Purchaser is not relying on any representation that is not contained in this Agreement.

Immediately next to the above section, McZeal initialed "AM" on a line for the buyer. The "Bill of Sale" also contemplates the possibility of a financing agreement and its sale to a third-party, stating:

5. If Purchaser is buying the motor vehicle for cash (this includes a Purchaser arranging his own financing), Purchaser agrees to pay the Balance Due under this agreement on or before the delivery date. If Purchaser is buying the motor vehicle in a credit sale transaction with Seller, which is evidenced by an executed installment sale contract, and the Seller intends to sell this installment sale contract to a third party finance source, this agreement will not remain binding if a third party finance source does not agree to purchase the installment sale contract based on this agreement.

The "Bill of Sale" also provides that it "shall be interpreted, construed, and enforced according to the laws of the State of Ohio."

*"Retail Motor Vehicle Credit Application"*

McZeal signed a "Retail Motor Vehicle Credit Application" that provides information to World Auto to submit to American Credit Acceptance to evaluate McZeal's eligibility for credit. The application indicates the credit was for individual rather than business or joint purposes and reiterates the financing terms detailed in the "Retail Installment Contract and Sales Agreement." McZeal signed her name in the "signatures" block and initialed at the bottom of page 1.

8

*"Spot Delivery Agreement"*

McZeal also signed a "Spot Delivery Agreement" that provides World Auto the ability to rescind the sale and explains the process if such rescission were to occur. The agreement states, in pertinent part:

> This agreement is attached to and forms a part of that certain installment sales agreement (installment contract) between WORLD AUTO NETWORK, INC, dealer, and the undersigned buyer(s), and concerns the following described vehicle . . . . Pending the purchase of the installment sales agreement (retail installment sales contract-chattel paper) by a financing institution, delivery of the above described vehicle by dealer is hereby made to buyer(s) as a convenience to buyer(s) and is subject to all terms and conditions of the "buyers order" executed concurrently." . . . Any untrue or incorrect statement, or any misrepresentation by buyer(s) in said application or in any of the documents comprising the transaction to purchase the installment sales agreement (retail installment contract-chattel paper) within three (3) days, or at the option of the dealer which may be extended for an additional twenty-seven (27) days thereafter, shall entitle dealer immediately to rescind the sale."

## SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56, made applicable to bankruptcy proceedings by Bankruptcy Rule 7056, provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Fed R. Bankr. P. 7056. Although Rule 56 was amended in 2010, the amendments did not substantively change the summary judgment

9

standard. *Newell Rubbermaid, Inc. v. Raymond Corp.*, 676 F.3d 521, 533 (6th Cir. 2012). "A court reviewing a motion for summary judgment cannot weigh the evidence or make credibility determinations." *Ohio Citizen Action v. City of Englewood*, 671 F.3d 564, 569 (6th Cir. 2012). "Instead, the evidence must be viewed, and all reasonable inferences drawn, in the light most favorable to the non-moving party." *Id.* at 570. "A genuine issue of material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.' " *Yeschick v. Mineta*, 675 F.3d 622, 632 (6th Cir. 2012) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

## DISCUSSION

The Court will first address World Auto's assertion that this transaction is not a consumer transaction. A consumer transaction is "a sale, lease, assignment, award by chance, or other transfer of an item of goods, a service, a franchise, or an intangible, to an individual for purposes that are primarily personal, family, or household, or solicitation to supply any of these things." Ohio Rev. Code § 1345.01(A). The evidence presented does not demonstrate that there is a dispute as to whether the transaction was a consumer transaction. McZeal and World Auto failed to check the box on the "Retail Installment Contract and Security Agreement" that, if checked, would indicate the contract was a "business,

10

commercial, or agricultural purpose contract."  Additionally, McZeal indicated in her affidavit attached to the trustee's reply in support of his motion for summary judgment that she purchased the vehicle for personal or home use.  (Docket No. 52-1).  World Auto failed to offer any evidence that this was not a consumer transaction.  Therefore, there is no genuine dispute that the transaction between McZeal and World Auto is a consumer transaction.

*Count One—The Consumer Sales Practices Act Deposit Requirement*

In count one, the trustee alleges that World Auto violated the Consumer Sales Practices Act by failing to provide McZeal with a receipt for her $2,500 deposit.

The Consumer Sales Practices Act provides that "[n]o supplier shall commit an unfair or deceptive act or practice in connection with a consumer transaction." Ohio Rev. Code § 1345.02(A).  The Ohio Administrative Code, as adopted under Ohio Revised Code Section 1345.05(B)(2), outlines "substantive rules defining acts or practices that violate [Section] 1345.02."  *Robinson v. McDougal*, 62 Ohio App. 3d 253, 260, 575 N.E.2d 469 (3d Dist.1988).  The Ohio Administrative Code provides that it is a deceptive act or practice to accept a deposit in connection with a consumer transaction unless:

11

(B) At the time of the initial deposit the supplier must provide to the consumer a dated written receipt stating clearly and conspicuously the following information:

> (1) Description of the goods and/or services to which the deposit applies, (including model, model year, when appropriate, make, and color);
> (2) The cash selling price and the amount of the deposit. "Cash selling price", for purpose of this rule, as it relates to motor vehicle transactions, includes all discounts, rebates and incentives;
> (3) Allowance on the goods to be traded in or other discount, if any;
> (4) Time during which any option given is binding;
> (5) Whether the deposit is refundable and under what conditions, provided that no limitation on refunds in a layaway arrangement may be made . . . ; and
> (6) Any additional costs such as storage, assembly or delivery charges.

Ohio Admin. Code § 109:4-3-07(B). A "deposit" means "any amount of money tendered or obligation to pay money incurred by a consumer for a refundable or non-refundable option, or as partial payment for goods or services." Ohio Admin. Code § 109:4-3-07(D). The act of accepting a deposit without providing the required information is a deceptive act, and "further dealings between the parties do not negate the violation." *Ganson v. Vaughn*, 135 Ohio App. 3d 689, 693, 735 N.E.2d 483 (1st Dist.1999). A party bringing a claim under the Consumer Sales Practices Act must prove a violation by a preponderance of the evidence. *Nyman v. de Montfort (In re de Montfort)*, No. 17-3009, 2017 Bankr. LEXIS 3531, at *27 (Bankr. N.D. Ohio Oct. 12, 2017); *Robinson*, 62 Ohio App. 3d at 262.

12

The "Buyer's Order" satisfies each of the requirements of a receipt for a $2,500 deposit. The "Buyer's Order" lists the model, model year, make, and color of the vehicle to which the deposit applies, as it shows that McZeal purchased a 2008 black Nissan Rogue. The "Buyer's Order" also lists the cash selling price and amount of deposit. The "Buyer's Order" presents a detailed itemization of the sale, including the vehicle sale price, various taxes and fees involved, the total balance due, and the cash down payment of $2,500. The "Buyer's Order" indicates McZeal did not trade in any other vehicle, and nothing in the "Buyer's Order" or in the filings indicates there was any option available in this transaction. The "Buyer's Order" details the conditions upon which the deposit is refundable on page 2, specifically in the "Agreement to Purchase" and the "Manufacturer" paragraphs. The parties do not suggest there were any additional costs that were part of this transaction but were not included in the "Buyer's Order."

In the trustee's reply, the trustee altered his argument and asserts there was no receipt provided for the transaction because McZeal only deposited $1,300 of the listed $2,500, with the remaining balance being deferred. If true, then the trustee may be successful on a claim that World Auto failed to provide McZeal with a receipt for her deposit. However, given the conflicting statements even within the trustee's own filings as to the amount that McZeal actually paid as a

13

deposit, there is a dispute of material fact as to whether World Auto provided a proper receipt for McZeal's deposit. Therefore, the trustee is not entitled to summary judgment as to liability on count one.

*Count Two—Failure to Notify of Advertised Price*

In count two, the trustee asserts that World Auto violated the Consumer Sales Practices Act by failing to notify McZeal of the advertised price of the vehicle.

The Ohio Administrative Code provides that it is "a deceptive and unfair act or practice for a dealer, . . . in connection with the advertisement or sale of a motor vehicle, to: (34) Fail to notify a consumer of a dealer's currently advertised price for a motor vehicle." Ohio Admin. Code § 109:4-3-16(B).

In World Auto's responses to the trustee's first set of requests for admission, World Auto admits that it informed McZeal the cash price for the vehicle was $12,085.00 and did not disclose to McZeal that the advertised price of the vehicle was $8,485.00. (Docket No. 46, Admissions 6–8). To prove a violation under Section 109:4-3-16(B)(34), the trustee simply must prove that the dealer failed to notify the purchaser of the advertised price. Here, World Auto admits that it failed to notify McZeal, but asserts that the increase in price was for repairs that McZeal requested. However, even if the reason for the increase were true, World Auto's

14

failure to notify McZeal of the advertised price still violates this section of the Consumer Sales Practices Act.  Thus, the trustee has demonstrated that there is no genuine dispute of material fact on this issue and that he is entitled to summary judgment as to liability on count two.

*Count Three—Raising the Price of the Vehicle*

In count three, the trustee alleges that World Auto violated the Consumer Sales Practices Act by raising the price of the vehicle to McZeal.

The Ohio Administrative Code provides that it is a deceptive and unfair act or practice for a dealer, in connection with the advertisement or sale of a vehicle, to "raise or attempt to raise the actual purchase price of any motor vehicle to a specific consumer except that a trade-in re-evaluation may occur . . ., a negative equity adjustment for a trade-in vehicle may be made, or the consumer otherwise consents to such price increase . . . ."  Ohio Admin. Code § 109:4-3-16(B)(17).  To prove a violation of the Consumer Sales Practices Act on this theory, the plaintiff does not have "to demonstrate that the supplier intended to be unfair or deceptive"; instead, how the consumer views the act or statement determines whether the act is unfair or deceptive.  *Frey v. Vin Devers, Inc.*, 80 Ohio App. 3d 1, 6, 608 N.E.2d 796 (6th Dist.1992).

15

The trustee has failed to prove the absence of a genuine dispute of material fact. The trustee alleges that World Auto raised the price to accommodate a discount charged by the finance company. However, World Auto asserts that it raised the price of the vehicle to accommodate requests by McZeal for four-wheel drive. The parties offer contradictory evidence on this issue. World Auto's manager stated in a deposition that McZeal requested the repairs; however, McZeal stated in her affidavit that she did not request repairs. Given the evidence presented, a reasonable jury could reach either conclusion as to the reason for World Auto's increased price. Therefore, the Court denies the trustee's motion for summary judgment as to liability on count three.

### Counts Four and Seven—Disclosure of the Terms of Financing and Charging a Usurious Rate of Interest

In counts four and seven, the trustee alleges that World Auto violated the Truth in Lending Act, the Retail Installment Sales Act, and the Consumer Sales Practices Act by failing to disclose to McZeal the terms of financing and by charging McZeal a usurious rate of interest.

The Ohio Revised Code provides that "a retail seller or holder may contract for and receive finance charges or interest at any rate or rates agreed upon or consented to by the parties to the retail installment contract or revolving budget agreement, but not exceeding an annual percentage rate of twenty-five per cent."

16

Ohio Rev. Code § 1317.061. The Truth in Lending Act requires the disclosure of items that are part of a consumer credit transaction, including charges related to finance charges. 15 U.S.C. § 1638(a). A "finance charge" is "the sum of all charges, payable directly or indirectly by the person to whom the credit is extended, and imposed directly or indirectly by the creditor as an incident to the extension of credit." 15 U.S.C. § 1605(a). Finance charges do not include any charges that would also be required in a comparable cash transaction. *Id.* A violation of the Truth in Lending Act must be proven by a preponderance of the evidence. *See Grogan v. Garner*, 498 U.S. 279, 286 (1991) (indicating that a preponderance of the evidence standard is presumed to be the standard applicable in civil actions).

The trustee has not demonstrated that he is entitled to summary judgment as a matter of law on this issue. The evidence presented does not provide enough information for the Court to make a reasoned determination. Although World Auto may have inflated the cost of the vehicle, the trustee has not demonstrated as a matter of law that the vehicle sales price includes finance charges. Therefore, the trustee is not entitled to summary judgment as to liability on counts four and seven.

17

*Count Five—Spot Delivery Agreement*

In count five, the trustee alleges that World Auto violated the Truth in Lending Act and the Consumer Sales Practices Act by requiring McZeal to sign both the "Spot Delivery Agreement" and the "Retail Installment Contract and Security Agreement."

Congress enacted the Truth in Lending Act in 1968 with the general purpose of "assur[ing] a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit." 15 U.S.C. § 1601(a); *Baker v. Sunny Chevrolet, Inc.*, 349 F.3d 862, 864 (6th Cir. 2003). Courts must construe the Truth in Lending Act liberally in favor of the consumer. *Baker*, 349 F.3d at 864. To achieve the purpose of "meaningful" disclosure, Section 1638 requires creditors to clearly and accurately disclose material terms to the transaction. 15 U.S.C. § 1638(a); *Rojas v. X Motorsport, Inc.*, 710 F. App'x 708, 710 (7th Cir. 2018). Notably, "[i]f information disclosed . . . is subsequently rendered inaccurate as the result of any act, occurrence, or agreement subsequent to the delivery of the required disclosures, the inaccuracy resulting therefrom does not constitute a violation of [the Truth in Lending Act]." 15 U.S.C. §1634; *Rojas*, 710 F. App'x at 710.

18

The trustee has not demonstrated that he is entitled to summary judgment as a matter of law. The trustee relies on cases from the Southern District of Ohio to support his motion for summary judgment on this claim that the "Spot Delivery Agreement" violated the Truth in Lending Act: *Salvagne v. Fairfield Ford, Inc.*, 794 F. Supp. 2d 826 (S.D. Ohio 2010), and *Patton v. Jeff Wyler Eastgate, Inc.*, 608 F. Supp. 2d 907 (S.D. Ohio 2007). Although these decisions are persuasive, they are not binding on this Court. This Court notes that other courts have held that spot delivery transactions do not necessarily violate the Truth in Lending Act. *See Janikowski v. Lynch Ford, Inc.*, 210 F.3d 765, 769 (7th Cir. 2000) (finding that the practice of "spot delivery" does not violate the Truth in Lending Act when the statutory obligation of providing truthful disclosures of the consumer's legal obligations is satisfied); *Anderson v. Frederick Ford Mercury, Inc.*, 694 F. Supp. 2d 324, 329 (D. Del. 2010) (recognizing that spot delivery transactions are not illegal absent some showing of fraud or misrepresentation); *Rucker v. Sheehy Alexandria, Inc.*, 228 F. Supp. 2d 711, 719 (E.D. Va. 2002) (noting the Truth in Lending Act does not prohibit spot delivery transactions and that spot delivery transactions are not illegal absent some showing of fraud or misrepresentation).

19

Additionally, the trustee asserts that the "Retail Installment Contract and Security Agreement" was fully integrated and therefore its terms were made illusory in violation of the Truth in Lending Act by the unilateral rescission term in the "Spot Delivery Agreement." However, the Court has already noted that certain contracts in this transaction, which were all signed on the same day, incorporated one another. (Docket No. 21). For example, the "Spot Delivery Agreement" makes reference to the "Retail Installment Contract and Security Agreement," evidencing an intent that these documents be read as incorporating one another. *See Mooneyham v. BRSI, LLC*, 682 F. App'x 655, 660 (10th Cir. 2017) ("Although the [Retail Installment Sale Contract] doesn't reciprocate this reference, that omission doesn't override the intent that [the parties] clearly expressed by executing the agreements together."); *see also Rojas*, 710 F. App'x at 711 (determining that agreements that explicitly incorporated one another did not contradict each other when one added a condition that the other did not forbid); *Muhammad v. Bedford Nissan, Inc.*, No. 1:11 CV 1947, 2012 U.S. Dist. LEXIS 1848, at *11–13 (N.D. Ohio Jan. 6, 2012) (finding that the assignment of financing rights was a condition subsequent and not illusory). Additionally, the "Bill of Sale" indicates the possibility of the "Retail Installment Contract and Security Agreement" no longer being binding if a third-party financing source did not

20

purchase the contract, which aligns with the purpose of the "Spot Delivery Agreement."

Because there is no controlling case law in the Sixth Circuit and because the "Spot Delivery Agreement" may be incorporated with the other contracts in this transaction, the trustee has not demonstrated that he is entitled to summary judgment as to liability on count five.

*Count Six—Fraud*

In count six, the trustee alleges that World Auto committed fraud because of its misrepresentations and omissions of fact.

The Sixth Circuit has determined that, under Ohio law, to establish a fraud claim, there must be:

> (1) a representation or, where there is a duty to disclose, concealment of a fact, (2) which is material to the transaction at hand, (3) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (4) with the intent of misleading another into relying upon it, (5) justifiable reliance upon the representation or concealment, and (6) a resulting injury proximately caused by the reliance.

*Aetna Cas. & Sur. Co. v. Leahey Constr. Co.*, 219 F.3d 519, 540 (6th Cir. 2000) (*citing Cohen v. Lamko, Inc.*, 10 Ohio St. 3d 167, 169, 462 N.E.2d 407 (Ohio 1984)); *Burr v. Board of Commissioners of Stark Co.*, 23 Ohio St. 3d 69, 73, 491 N.E.2d 1101 (Ohio 1986).  A plaintiff seeking money damages through its

21

claim of fraud must "prove these elements by a preponderance of the evidence." *Doyle v. Fairfield Mach. Co.*, 120 Ohio App. 3d 192, 206, 697 N.E.2d 667 (11th Dist.1997); *see Household Finance Corp. v. Altenberg*, 5 Ohio St.2d 190, 193–94, 214 N.E.2d 667 (Ohio 1966). In contrast, a plaintiff seeking "to rescind a contract and to recover the consideration paid" must prove these elements by clear and convincing evidence. *Cross v. Ledford*, 161 Ohio St. 469, 479, 120 N.E.2d 118 (Ohio 1954); *Takis, LLC v. C.D. Morelock Props., Inc.*, 180 Ohio App. 3d 243, 254, 905 N.E.2d 204 (10th Dist.2008).

The Court will not grant summary judgment as to liability on count six because a genuine dispute of material fact exists as to the reason for the difference in price between the advertised price and the price for which McZeal purchased the vehicle. A reasonable jury could determine that the increase in the price of the vehicle was due to McZeal's request for improvement of the vehicle. If a jury reaches that conclusion, then the trustee could not prove that World Auto's representation of the sale price was made falsely or that World Auto made a false representation with the intent of misleading McZeal. Therefore, the trustee is not entitled to summary judgment as to liability on count six.

22

CONCLUSION

For the reasons stated above, the Court grants in part the trustee's motion for partial summary judgment. The Court grants summary judgment in favor of the trustee as to liability on count two and denies summary judgment as to liability on all remaining counts. The Court will issue a separate order scheduling a jury trial and setting related deadlines.

IT IS SO ORDERED.

16-01119-aih    Doc 58    FILED 03/14/19    ENTERED 03/15/19 10:34:55    Page 23 of 23